**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| TALAYNA CLEMENTS | ) | |
| 3512 CLAY PLACE, NE | ) | |
| WASHINGTON, DC 20019 | ) | |
| Plaintiff, | ) | Case No.:__________________ |
| v. | ) | |
| THE STADIUM GROUP, LLC | ) | |
| 2127 QUEENS CHAPEL ROAD, NE | ) | |
| WASHINGTON, DC 20018 | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Talayna Clements a/k/a exotic dancer "Casey" ("Plaintiff), by and through undersigned counsel hereby submits her Complaint against Defendant The Stadium Group, LLC d/b/a Stadium Club ("Defendant") to recover unpaid wages and statutory damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and for unpaid wages, interest, reasonable attorney's fees, and costs under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.* (hereinafter, "DCMWA"), and § 2-1402.11 of the D.C. Human Rights Act as set forth below.

**PARTIES AND JURISDICTION**

1. Plaintiff is an adult resident of the District of Columbia. At all times relevant, Plaintiff performed work duties as an exotic dancer at Defendant's Stadium Club exotic dance club in Washington, D.C.

2. Defendant is a limited liability company formed under the laws of the District of Columbia with its principal place of business located in Washington, D.C.

3. At all times, Defendant has done business as The Stadium Club, advertising itself to the public as an exotic dance club featuring nude and semi-nude exotic dancers.

4. At all times, Defendant was Plaintiff's “employer” for purposes of the FLSA and DCMWA.

5. At all times, Defendant was engaged in commerce or in production of goods for commerce within the meaning of §3(s)(1) of the FLSA (29U.S.C. §203 (s)(1)).

6. At all times, Defendant qualified as an “enterprise” within the meaning of §3(r) of the FLSA (29 U.S.C § 203 (r)).

7. At all times, Plaintiff was an individual employee engaged in commerce or the production of goods for commerce as required by 29 U.S.C.§§ 206-207.

8. This Court has jurisdiction over Defendant pursuant to § 16(b) of the FLSA, 29 U.S.C§ 216(b), and 28 U.S.C § 1337 relating to “any civil action or proceeding arising under any act of Congress regulating commerce.” Subject matter jurisdiction was invoked under 28 U.S.C § 1331 (Federal Question) Venue in this Court is proper pursuant to 28 U.S.C § 1391.

**FACTS**

9. Plaintiff was employed by Defendant as an exotic dancer from about February 7, 2012 through about March 31, 2012.

10. The Manager would stick his tongue out at Plaintiff and make sexual comments and say “when can I come over your house”, each time Plaintiff would rebuff his advances.

11. On about April 1, 2012 Defendant terminated Plaintiff's employment citing Plaintiff's subjectively undesirable tattoo as cause for termination.

12. After Defendant's termination of Plaintiff's employment, Plaintiff continuously contacted Defendant requesting to be re-hired. Defendant through its Manager, continued to refuse to re-

hire Plaintiff but implied that if Plaintiff would engage in certain sexual activities with Defendant's manager, Defendant would re-hire Plaintiff.

13. Plaintiff refused to engage in sexual activities with Defendant's manager and, eventually on or about May15, 2012, Defendant re-hired Plaintiff as an exotic dancer.

14. The Defendant's manager was subsequently promoted to General Manager after the previous General Manager had been fired.

15. Upon Plaintiffs return to work the manager (who had previously sexually harassed Plaintiff) had now became the General Manager and he continuously sexually harassed, made sexual remarks and sexual advances, and harassed the Plaintiff. Plaintiff stiff rebuffed his advances.

16. In July 2012, after a private party for some professional NFL football players, Plaintiff, another dancer, and the General Manger entered Stadium together. The General Manager told Plaintiff and the other dancer to stay and have a drink. Plaintiff initially refused. The General Manager insisted.

17. Plaintiff drank the drink that General Manager made. The other dancer went outside to smoke a cigarette. The General Manager then told Plaintiff to come over here and dance for me, so she did. Plaintiff was doing an exotic dance with her back facing the General Manger. While Plaintiff was dancing she turned around and she saw him pull his pants down and noticed he had an erect penis. He then put a condom on . The General Manager then told Plaintiff that she was going to have sex with him right now. The Plaintiff was scared and intimidated. She did not know what to do. So she unwillingly had sex with him for fear of losing her job and her livelihood. The General Manager had sex with her for a few minutes before he ejaculated. Plaintiff felt humiliated. Plaintiff felt ashamed. She also felt dirty, so she left the Stadium.

18. The General Manager had the power and authority to fire her. He had been promoted after

previous General Manager had been fired. Plaintiff felt like if she did not do what the General Manager told her to do that she would be fired. Plaintiff was a 28 year old self-supporting college student. If Plaintiff was fired a job she would be evicted from her apartment and have no place to stay.

19. During the period of Plaintiffs employment, Plaintiff regularly and customarily worked about five(5) or more nights per week calculating to approximately forty-five (45) or more hours per week.

20. At all times during the period of Plaintiff's employment, Defendant had knowledge that Plaintiff typically worked about forty-five (45) or more hours per week and suffered or permitted Plaintiff work about forty-five (45) or more hours per week.

21. At all times throughout Plaintiff's employment with Defendant, Defendant totally failed to pay Plaintiff any wages for work duties performed.

22. At all times throughout Plaintiff's employment with Defendant, Plaintiff was an employee of Defendant and was never an independent contractor.

23. While it is true that Defendant titled or classified Plaintiff as an independent contractor, at all times while working for Defendant, Plaintiff considered herself an employee of Defendant and that Defendant was Plaintiff's employer.

24. At all times Plaintiff was employed by Defendant, Defendant controlled all aspects of Plaintiff's job duties through strictly enforced employment rules.

25. Defendant hired Plaintiff and , at all times, had the ability to discipline Plaintiff, fine Plaintiff, fire Plaintiff, and adjust Plaintiff's schedule.

26. Defendant at all times, supervised Plaintiff's work duties to make sure Plaintiff's job performance was of sufficient quality.

27. At all times while Plaintiff was employed by Defendant, Plaintiff's pay and opportunity for wages was limited to Plaintiff's pay method set exclusively by Defendants.

28. Defendant controlled all aspects of setting and enforcing Plaintiff's work schedule.

29. Plaintiff was never able to make more money or enjoyed more financial benefits if Defendant was operating successfully and realizing increased or additional profits.

30. At no time did Plaintiff make a financial investment in Defendant or any equipment belonging to Defendant.

31. To perform the work duties that Plaintiff performed for Defendant, Plaintiff did not have or need any required certificate, education, or specialized training.

32. At all times while Plaintiff was employed by Defendant, Defendant was in the business of operating a night club featuring exotic dancers and at all times it was Plaintiff's job duty for Defendant was directly related to exotic dancing performances for Defendant's customers.

33. Plaintiff did not perform work that is exempt from the minimum wage or overtime requirement of the FLSA or DCMVA.

FEES, FINES, AND CHARGES

34. In addition to failing to pay Plaintiff wages for hours worked, Defendant enforced a series of fees and fines requiring Plaintiff to actually pay Defendant a significant portion of the money Plaintiff received as tips from customers.

35. On a typical shift, Plaintiff actually paid Defendant, through fines, fees, and charges, approximately two hundred fifty dollars ($250.00) or more.

36. The fines and fees paid by Plaintiff to Defendant included, but were not limited to :

a) A mandatory “tip-in” by Plaintiff to Defendant, per shift ranging from $33.00-$100.00 (or more

if Defendant was hosting a special event);

b) A mandatory "tip-out" by Plaintiff to Defendant's disc jockeys, House Mom, and security ranging from $50.00-$60.00;

c) A mandatory tip sharing of Plaintiff's on-stage and table dance tips to Defendant's "floor-man," ranging from $10.00-$20.00 per table dance or stage appearance;

d) A mandatory fine for calling out of work for sickness or other personal reasons ranging from $30.00 with a doctor's note to $60.00 or more without a doctor's note;

e) Strictly enforced fines for violating club rules ranging from $100.00-$300.00 per violation; and

f) A mandatory sharing and assignment by Plaintiff to Defendant of all tips and monies received by Plaintiff from Defendant's customers for each performance of private and semi-private dances.

37. The net result of Defendant's fee and fine system was that Plaintiff's regular hourly rate was actually properly calculated in the negative.

**CAUSES OF ACTON**

**COUNT I**

**Violation of Federal Fair Labor Standards Act**

**(Minimum Wage)**

38. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-37 above as if each were set forth herein.

39. Section 206 (a)(1) of FLSA provides that no employer shall employ any employee for an hourly wage of less than the federal minimum wage, currently $7.25 per hour.

40. At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C §206(a(1)

41. At all times, Defendant was Plaintiffs "employer" under the FLSA.

42. Defendant, as Plaintiff's employer, was obligated to compensate Plaintiff for all hours worked at an hourly rate not less than the Federal Minimum Wage.

43. At all times, Defendant paid Plaintiff no wages for hours worked.

44. More exactly when the fees and fines that Defendant deducted from Plaintiff's tips and personal monies are factored in, Defendant paid Plaintiff a net average hourly rate equal to approximately negative Twenty Seven Dollars and Seventy-Eight Cents (-$27.78) per hour.

45 At all times relevant, Plaintiff's net negative hourly rate fell below the applicable Federal Minimum Wage.

46. The FLSA allows employers to pay less than minimum wage to employees who receive tips...The mechanism it creates to allow employers to pay less than minimum wage is the “tip credit.” See 29 U.S.C.§ 203(m)).

47. Employers may only take a tip credit if certain requirements are met. See 29 U.S.C § 203 (m). Namely, (1) the employer must give the employee proper notice of taking a tip credit; (2) the employee must retain all of her tips except for those lawfully shared with other employees; and (3) the employee, through her tips, must make up the difference between the tipped minimum wage and full minimum wage-if she does not, the employer must pay her the difference in wages. See id; 29 C.F.R. §531.59.

48. Here, Defendant did not give Plaintiff any notice that it was taking or intended to take the tip credit.

49. Here, Defendant (because it took and kept for its own use) a portion of Plaintiff's tips, as a consequence, Plaintiff did not retain all of her tips received from Defendant's customers.

50. Here, Defendant (because it took and kept for its own use) a portion of Plaintiff's tips, as a consequence, Plaintiff did not retain all of her tips received from Defendant's customers.

51. Here, Defendant failed to pay Plaintiff the difference between the minimum wage and the amounts Plaintiff received from tips on nights where Plaintiff's tips did not meet or exceed the minimum wages.

52. Because the three (3) “tip credit” requirements were met by Defendant, Defendant cannot avail itself of the FLSA's “tip credit” in calculating back wages owed to Plaintiff.

53. Defendant has failed and refused to compensate Plaintiff at an hourly rate at least equal to the Federal Minimum Wage as required by the FLSA for numerous hours worked.

54. Defendant's failure and refusal to pay compensation to Plaintiff as required buy the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Plaintiff asks this court to Declare the actions of as described in the preceding paragraphs to be unlawful employment practices in violation of the laws of United States and hold Defendant liable to Plaintiff under Count I for unpaid minimum wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), punitive damages, attorney’s fees, the costs of this action, and any other and further relief this Court deems appropriate and enter a judgment against Defendant.

## COUNT II

## Violation of Federal Fair Labor Standards Act (Overtime)

55. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-54 above, as if each were set forth herein.

56. Section 207(a)(1) of the FLSA provides that no employer shall employ any of its employees for a work week longer than forty (40) hours unless such employee receives compensation for her employment is excess of the hours above specified at a rate not less than the higher of one-and-one-half (1.5) times the regular rate at which she is employed or one-and-one half times the Federal Minimum

Wage.

57. At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1), and Defendant was Plaintiff's "employer" under FLSA, 29 U.S.C. § 207(a)(2).

58. Defendant, as Plaintiff's employer, was obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1.5) times the higher of Plaintiff's regular rate of pay or the applicable federal minimum wage for all hours worked per week in excess of forty (40).

59. As set forth above, while in Defendant's employment, Plaintiff typically and customarily worked about five (5) or more hours of overtime, each week.

60. As set forth above, Defendant failed and refused to compensate Plaintiffs properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40). Defendant's failure and refusal to pay Plaintiff as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith.

61. Defendants have failed and refused to compensate Plaintiff as required by the FLSA for numerous hours worked. This failure and refusal to pay compensation as required by the FLSA was willful and intentional, and not in good faith and done with actual malice.

WHEREFORE, Plaintiff asks this court to Declare the actions of as described in the preceding paragraphs to be unlawful employment practices in violation of the laws of United States and hold Defendant liable to Plaintiff under Count II for unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), punitive damages, attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate and enter a judgment against Defendant.

## COUNT III

**DCMWA**
**(Minimum Wage and Overtime)**

62. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-61 above, as if each were set forth herein.

63. Plaintiff was an “employee” and Defendant was Plaintiff's “employer” within the meaning of DCMWA.

64. As Plaintiff's an “employer,” Defendant was obligated to pay Plaintiff wages at least equal to $8.25 per hour, the District of Columbia Minimum Wage and overtime compensation at the rate of not less than the higher of one-and-one-half (1.5) times the higher of Plaintiff's regular hourly rate of pay or the District of Columbia Minimum Wage for all hours worked in excess of forty (40) hours in any given workweek.

65. As set forth above, while in Defendants employ, Plaintiff worked many non-overtime and overtime hours for which Defendant failed and refused to properly compensate Plaintiff as required by the DCMWA for all non-overtime and overtime hours worked.

66. Unpaid minimum wage compensation and overtime pay is therefore due owing to Plaintiff under DCMWA.

67. Defendant's failure to comply with its obligations under DCMWA to pay Plaintiff for all hours worked as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiff under Count III, for all unpaid and/or improperly deducted wages in such amounts to be proven at trial, plus two (2x) times the amount of unpaid and/or improperly deducted wages as additional damages, interest (both pre- and post-judgment), attorney’s fees, costs, punitive damages and any other further relief this Court deems appropriate.

## COUNT IV

## VIOLATION OF THE D.C. HUMAN RIGHTS ACT §2-1402.11

### Sexual Discrimination-Hostile Work Environment

68. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-67 above, as if each were set forth herein.

69. The Manager would stick his tongue out at Plaintiff and make sexual comments and say "when can I come over your house" in front of upper management but no action was taken by them.

70. On about April 1, 2012 Defendant terminated Plaintiff's employment citing Plaintiff's subjectively undesirable tattoo as cause for termination.

71. After Defendant's termination of Plaintiff's employment, Plaintiff continuously contacted Defendant requesting to be re-hired. Defendant through its Manager, continued to refuse to re-hire Plaintiff but implied that if Plaintiff would engage in certain sexual activities with Defendant's manager, Defendant would re-hire Plaintiff.

72. Plaintiff refused to engage in sexual activities with Defendant's Manager and, eventually on or about May15, 2012, Defendant re-hired Plaintiff as an exotic dancer.

73. The Defendant's manager was subsequently promoted to General Manager after the previous General Manager had been fired.

74. Upon Plaintiffs return to work the General Manager continuously sexually harassed, made sexual remarks and sexual advances, and harassed the Plaintiff in front of everyone and upper management saw it and did nothing.

75. In July 2012, after a private party for some professional NFL football players, Plaintiff, another dancer, and the General Manger entered Stadium together. The General Manager told Plaintiff and the other dancer to stay and have a drink. Plaintiff initially refused. The General Manager insisted.

76. Plaintiff drank the drink that General Manager made. The other dancer went outside to smoke a cigarette. The General Manager then told Plaintiff to come over here and dance for me, so she did. Plaintiff was doing an exotic dance with her back facing the General Manger. While Plaintiff was dancing she turned around and she saw him pull his pants down and noticed he had an erect penis. He then put a condom on . The General Manager then told Plaintiff that she was going to have sex with him right now. The Plaintiff was scared and intimidated. She did not know what to do. So she unwillingly had sex with him for fear of losing her job and her livelihood. The General Manager had sex with her for a few minutes before he ejaculated. Plaintiff felt humiliated. Plaintiff felt ashamed. She also felt dirty, so she left the Stadium. Plaintiff experienced emotional distress from Defendant's actions.

77. The General Manager had the power and authority to fire her. He had been promoted after previous General Manager had been fired. Plaintiff felt like if she did not do what the General Manager told her to do that she would be fired. Plaintiff was a 28 year old self- supporting college student. If Plaintiff was fired a job she would be evicted from her apartment and have no place to stay.

78. Plaintiff made herself available to receive services and employment opportunities ordinarily provided by the Defendant.

79. Plaintiff was threatened and placed in an objectively and subjectively hostile and offensive work environment because of the actions and conduct of a General Manager, and because Defendant's employees failed to take any actions to protect Plaintiff from the General Manager's actions.

80. The General Manager made Plaintiffs work situation extremely uncomfortable.

81. The General Manager's conduct was frequent as it occurred on numerous occasions.

82. The General Manger's actions were intentional and done with actual malice.

83. The General Manager's offensive conduct permeated Plaintiff's workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive that altered the conditions of

Plaintiff's employment and created an abusive work environment.

84. Plaintiff felt threatened by the General Managers sexual harassment, harassment, and sexual comments.

85. Defendant deprived Plaintiff of employment opportunities ordinarily provided to its employees and thereby adversely affected her status as an employee.

86. Defendant discriminated against Plaintiff with respect to her terms, conditions and privileges of employment. As a direct and proximate result of the aforesaid deprivation of Plaintiff rights under the D.C. Human Rights Act § 2-1402.11, the Plaintiff suffered severe damages.

87. Plaintiff was humiliated, embarrassed, and denied the opportunity to continue her profession in a non-hostile work environment. Defendant intentionally discriminated against Plaintiff with malice. Wherefore, Plaintiff requests the following relief:

Compensatory and punitive damages in the amount of $2,000,000; Pre and Post-judgment interest; The cost of litigation, including attorney's fees and expert witness fees and Such other relied that may be just.

**COUNT IV**

**VIOLATION OF THE D.C. HUMAN RIGHTS ACT §2-1402.11**

**Sexual Discrimination-Quid Pro Quo**

88. Plaintiff re-pleads and re-alleges paragraphs 1 through 87, with the same force and effect as if set forth separately at length herein.

89. The Manager would stick his tongue out at Plaintiff and make sexual comments and say “when can I come over your house” in front of upper management and no action was taken by them

90. On about April 1, 2012 Defendant terminated Plaintiff's employment citing Plaintiff's subjectively undesirable tattoo as cause for termination.

91. After Defendant's termination of Plaintiff's employment, Plaintiff continuously contacted

92. Defendant requesting to be re-hired. Defendant through its manager, continued to refuse to re-hire Plaintiff but implied that if Plaintiff would engage in certain sexual activities with Defendant's Manager, Defendant would re-hire Plaintiff.

93. Plaintiff refused to engage in sexual activities with Defendant's manager and, eventually on or about May15, 2012, Defendant re-hired Plaintiff as an exotic dancer.

94. The Defendant's manager was subsequently promoted to General Manager after the previous General Manager had been fired.

95. Upon Plaintiffs return to work the General Manager continuously sexually harassed, made sexual remarks and sexual advances, and harassed the Plaintiff.

96. In July 2012, after a private party for some professional NFL football players, Plaintiff, another dancer, and the General Manger entered Stadium together. The General Manager told Plaintiff and the other dancer to stay and have a drink. Plaintiff initially refused. The General Manager insisted.

97. Plaintiff drank the drink that General Manager made. The other dancer went outside to smoke a cigarette. The General Manager then told Plaintiff to come over here and dance for me, so she did. Plaintiff was doing an exotic dance with her back facing the General Manger. While Plaintiff was dancing she turned around and she saw him pull his pants down and noticed he had an erect penis. He then put a condom on. The General Manager then told Plaintiff that she was going to have sex with him right now. The Plaintiff was scared and intimidated. She did not know what to do. So she unwillingly had sex with him for fear of losing her job and her livelihood. The General Manager had sex with her for a few minutes before he ejaculated. Plaintiff felt humiliated. Plaintiff felt ashamed. She also felt dirty, so she left the Stadium. Plaintiff experienced emotional distress from Defendant’s actions.

98. The General Manager had the power and authority to fire her. He had been promoted

after the previous General Manager had been fired. Plaintiff felt like if she did not do what the General Manager told her to do that she would be fired. Plaintiff was a 28 year old self-supporting college student. If Plaintiff was fired a job she would be evicted from her apartment and have no place to stay.

99. The General Manager would stick his tongue out at Plaintiff and make sexual comments such as when can I come over your house. Plaintiff would reply never. The General Manager would say "You know you owe me for getting you your job back."

100. The General Managers conduct was surmounted to quid pro quo.

101. Plaintiff felt like she had no choice but to comply with the General Manger

102. The General Manger's actions were intentional and done with actual malice

Wherefore, Plaintiff requests the following relief:

Compensatory and punitive damages in the amount of $2,000,000; Pre and Post-judgment interest; The cost of litigation, including attorney's fees and expert witness fees and Such other relied that may be just.

**JURY DEMAND**

103. Plaintiff demands a trial by jury.

Respectfully submitted,

___/s/______________________________

J. Wiggs, Esq.

The Wiggs Law Group, LLC

9701 Apollo Drive, Suite 301
Upper Marlboro, MD 20774
240-326-3711
Bar#MD18231